UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MAHA A., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:23-cv-00011 <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Maha A.[1] brought this action for judicial review of the denial of her application for supplemental security income under Title XVI of the Social Security Act[2] by the Acting Commissioner of the Social Security Administration (the "Commissioner").[3] The Administrative Law Judge ("ALJ") determined Ms. A. did not qualify as disabled.[4]

Ms. A. argues the ALJ erred by failing to resolve a conflict between the Dictionary of Occupational Titles and the vocational expert's testimony.[5] Specifically, she argues her inability to communicate in English rendered her unable to perform the requirements of the jobs identified by the vocational expert.[6] But as explained below, under the revised regulations applicable to

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] 42 U.S.C. §§ 1381–1385.

[3] (*See* Compl., Doc. No. 1.)

[4] (Certified Tr. of Admin. R. ("Tr.") 15–29, Doc. No. 6.)

[5] (Opening Br. 4–8, Doc. No. 7.)

[6] (*Id.*)

1

Ms. A.'s claim, inability to communicate in English is no longer considered. Accordingly, after careful review of the entire record and the parties' briefs,[7] the undersigned[8] recommends the district judge affirm the Commissioner's decision.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[9] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[10]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[11] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] "The possibility of drawing two

---

[7] This recommendation is based on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[8] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 5.)

[9] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (citation omitted).

[13] *Id.* (citation omitted).

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[16] An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[17]

In making a disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe, medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) the claimant has a residual functional capacity to perform past, relevant work; and

---

[14] *Lax*, 489 F.3d at 1084 (citation omitted).

[15] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 1382c(a)(3)(A).

[17] *Id.* § 1382c(a)(3)(B).

    5) she has a residual functional capacity to perform other work in the national economy considering her age, education, and work experience.[18]

The claimant has the burden of establishing disability in the first four steps.[19] At step five, the burden shifts to the Commissioner to show the claimant can perform other work existing in the national economy.[20]

## PROCEDURAL HISTORY

Ms. A. applied for Title XVI supplemental security income on May 22, 2020, alleging disability beginning on June 1, 2014.[21] After a hearing,[22] the ALJ issued a decision on March 30, 2022, finding Ms. A. was not disabled.[23]

At step two of the sequential evaluation, the ALJ found Ms. A. had the severe impairments of diabetes mellitus type two and moderate asthma.[24] The ALJ found Ms. A. also had nonsevere mental impairments of depression and post-traumatic stress disorder, as well as

---

[18] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] (*See* Tr. 15, 163–70.)

[22] (*See* Tr. 33–55.)

[23] (Tr. 15–29.)

[24] (Tr. 18.)

other nonsevere physical impairments.[25] At step three, the ALJ found Ms. A.'s impairments did not meet or equal the severity of an impairment listing.[26]

The ALJ then determined Ms. A. had the residual functional capacity ("RFC") to perform "light work" with the following exceptions:

> [S]he can frequently climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; she can never be exposed to hazards such as unrestricted heights and dangerous moving machinery; she can occasionally be exposed to pulmonary irritants; and she can frequently be exposed to moderate noise as defined in the Selected Characteristics of Occupations ("SCO").[27]

As relevant here, the ALJ also noted that Ms. A. testified she came to the United States in 2017 and took English classes, but she stopped taking them due to problems remembering what she learned.[28] The ALJ noted that Ms. A. claimed she could not speak, read, or write English, but she reported completing middle school in Iraq and could read and write "a little bit" in Arabic.[29]

At step four, the ALJ found Ms. A. had no past relevant work.[30] At step five, relying on the testimony of a vocational expert and considering Ms. A.'s age, education, work experience, and RFC, the ALJ found Ms. A. capable of performing other jobs existing in significant numbers

---

[25] (*Id.*) The ALJ found Ms. A. had non-severe physical impairments of "COVID-19 infection; headaches; stress incontinence; gastrointestinal disorder; myofascitis/epicondylitis/sciatica/tendinitis; hyperlipidemia; and benign paroxysmal positional vertigo." (*Id.*)

[26] (Tr. 20–21.)

[27] (Tr. 21.)

[28] (Tr. 22.)

[29] (*Id.*)

[30] (Tr. 28.)

in the national economy, including housekeeper, laundry worker, and merchandise marker.[31] Therefore, the ALJ found she was not disabled.[32]

The Appeals Council denied Ms. A.'s request for review,[33] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. A. argues the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony.[34] Specifically, she argues her inability to communicate in English rendered her unable to perform the requirements of the jobs identified by the vocational expert.[35] As explained below, this argument fails where the DOT does not require an ability to communicate in English for the jobs identified, and revised agency regulations and guidance applicable to Ms. A.'s claim provide that inability to communicate in English is no longer considered.

An ALJ may not rely on evidence from a vocational expert to support a finding of nondisability at step five unless the ALJ asks the expert "how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit[s] a reasonable explanation for any discrepancy on this point."[36] If the vocational expert's testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable

---

[31] (*Id.*)

[32] (Tr. 29.)

[33] (Tr. 1–3.)

[34] (Opening Br. 4–9, Doc. No. 7.)

[35] (*Id.*)

[36] *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999).

6

explanation for the apparent conflict."[37]  The ALJ must then resolve the conflict before relying on the vocational expert's testimony to support a finding of nondisability, and must "explain in the determination or decision how he or she resolved the conflict."[38]

Here, the vocational expert testified that a person with Ms. A.'s RFC was capable of performing the occupations of housekeeper, laundry worker, and merchandise marker.[39]  The ALJ asked the vocational expert whether her testimony was consistent with the DOT and she confirmed it was.[40]

Nevertheless, Ms. A. asserts there was a conflict between the vocational expert's testimony and the DOT because all three jobs identified by the vocational expert required "Language Level 1" abilities pursuant to the DOT.[41]  According to the DOT, "Language Level 1" requires recognizing the meaning of 2,500 two- or three-syllable words, reading at a rate of 95 to 120 words per minute, printing simple sentences, and speaking simple sentences.[42]  Ms. A. argues she cannot meet these job requirements because she is unable to communicate in English,

---

[37] Soc. Sec. Ruling No. 00-4p, 2000 SSR LEXIS 8, at *9.

[38] *Id.*; *see also Haddock*, 196 F.3d at 1090–91.

[39] (Tr. 52–53.)

[40] (Tr. 54.)

[41] (Opening Br. 6–7, Doc. No. 7); *see also Dictionary of Occupational Titles* (4th ed. 1991) ("DOT") 323.687-014, 1991 WL 672783 (cleaner, housekeeping); DOT 302.685-010, 1991 WL 672657 (laundry worker, domestic); DOT 209.587-034, 1991 WL 671802 (marker).

[42] *See* DOT, App'x C, 1991 WL 688702; *see also* DOT 323.687-014, 1991 WL 672783 (cleaner, housekeeping); DOT 302.685-010, 1991 WL 672657 (laundry worker, domestic); DOT 209.587-034, 1991 WL 671802 (marker).

and she contends the ALJ erred by failing to address the conflict between these requirements and the vocational expert's testimony.[43]

Ms. A.'s argument fails because the DOT does not require an ability to communicate in English in order to meet the "Language Level 1" requirements. The DOT does not specify that the reading, writing, and speaking requirements of this language level must be met in English.[44] Further, agency regulations were revised in 2020 to provide that the agency "no longer consider[s] whether an individual is able to communicate in English at the fifth and final step of the sequential evaluation process."[45] The revised regulations apply to all cases decided on or after their effective date of April 27, 2020[46]—including this case, which was decided on March 30, 2022.[47] The agency also promulgated Social Security Ruling 20-01p, effective the same date, which explains:

> When determining the appropriate education category, we will not consider whether an individual attained his or her education in another country or whether the individual lacks English language proficiency. Neither the country in which an individual was educated nor the language an individual speaks informs us about whether the individual's reasoning, arithmetic, and *language abilities* are commensurate with his or her formal education level.[48]

Where the DOT does not specify that the language requirements of the jobs identified by the vocational expert must be met in English, and revised agency regulations provide that an

---

[43] (Opening Br. 6–9, Doc. No. 7.)

[44] *See* DOT, App'x C, 1991 WL 688702.

[45] 85 Fed. Reg. 10586, at *10587.

[46] *Id.* at *10587, 10596.

[47] (*See* Tr. 29.)

[48] Soc. Sec. Ruling 20-01p, 2020 SSR LEXIS 2, at *4–5 (emphasis added).

inability to communicate in English is no longer considered, there was no conflict between vocational expert's testimony and the DOT for the ALJ to resolve. Ms. A.'s inability to communicate in English did not render her unable to meet the language requirements of the jobs identified by the vocational expert. As the ALJ noted in his decision, Ms. A. completed middle school and testified she could read and write "a little bit" in Arabic.[49] Indeed, Ms. A. "does not dispute the ALJ's finding that she has a limited education [] or that she is 'literate.'"[50] Under these circumstances, Ms. A.'s inability to communicate in English did not create an apparent conflict between the DOT and the vocational expert's testimony. Thus, the ALJ was not required to elicit an explanation from the vocational expert on this issue, and the ALJ did not err in relying on the vocational expert's testimony.

Ms. A. relies on *Rana S. v. Saul*,[51] which held a plaintiff's inability to communicate in English potentially conflicted with the "Language Level 1" requirements of jobs identified by the vocational expert, and that the ALJ erred by failing to inquire about the potential inconsistency.[52] However, *Rana S.* addressed a claim decided before the 2020 revised regulations providing that inability to communicate in English is no longer considered.[53] Thus, *Rana S.* is superseded by the revised agency regulations and guidance, which are applicable to Ms. A.'s claim.

In her reply brief, Ms. A. attempts to salvage her argument by asserting her inability to communicate effectively in English is an impairment-related limitation which should have been

---

[49] (Tr. 22.)

[50] (Pl.'s Reply Br. 2, Doc. No. 14.)

[51] No. 2:19-cv-00329, 2020 U.S. Dist. LEXIS 77263 (D. Utah Apr. 30, 2020) (unpublished).

[52] *Id.* at *4–5, 7–8.

[53] *See id.* at *3 (stating the ALJ's decision was issued on May 21, 2018).

included in the ALJ's RFC finding.[54] However, her opening brief raises only one claim of error: that the ALJ failed to resolve a conflict between the DOT and the vocational expert's testimony at step five.[55] Because Ms. A. did not challenge the ALJ's RFC finding in her opening brief, this argument is waived.[56] Even if she had properly raised this argument, Ms. A. does not demonstrate the ALJ erred in his consideration of her English-language limitations. In discussing her RFC, the ALJ expressly acknowledged Ms. A.'s testimony that she cannot communicate in English.[57] Ms. A. does not explain what additional findings or limitations should have been included. Thus, the record demonstrates the ALJ adequately considered this issue. Further, Ms. A. cannot demonstrate harmful error, where the revised regulations and guidelines provide that an applicant's ability to communicate in English is no longer considered at step five.[58]

For these reasons, Ms. A. has not demonstrated the ALJ failed to apply the correct legal standards, or that his decision is unsupported by substantial evidence. Accordingly, the Commissioner's decision should be affirmed.

---

[54] (Pl.'s Reply Br. 2, Doc. No. 14.)

[55] (Opening Br. 4, Doc. No. 7.)

[56] *See Scott v. Berryhill*, 695 F. App'x 399, 406 n.5 (10th Cir. 2017) (unpublished) ("We decline to consider an argument made for the first time in a reply brief, to which the Commissioner had no opportunity to respond."); *City of Colo. Springs v. Solis*, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) ("[A]rguments not raised in the opening brief are waived.").

[57] (Tr. 22.)

[58] *See* 85 Fed. Reg. 10586, at *10587; Soc. Sec. Ruling 20-01p, 2020 SSR LEXIS 2, at *4–5.

RECOMMENDATION

The undersigned RECOMMENDS the district judge AFFIRM the Commissioner's decision. The court will send copies of this Report and Recommendation to all parties, who are notified of their right to object. Any objection to this Report and Recommendation must be filed within fourteen days of service.[59] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of December, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[59] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).